UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID L. COUNTS, | 4:23-CV-04103-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR EVIDENTIARY HEARING |
| KELLIE WASKO, in her individual and official capacities; BRENT FLUKE, in his individual and official capacities; ALEJANDRO REYES, in his individual capacity; REBECCA SCHIEFFER, in her individual capacity; ROB CARUNA, in his individual capacity; MARK STOEBNER, in his individual capacity; TRAVIS TJEERDSMA, in his individual capacity; LYNN SCHRYVERS, in his individual capacity; TAMMY DOYLE, in her individual capacity; MIKE DOYLE, in his individual capacity; TONY SHELBURG, in his individual capacity; LEE KAUFENBERG, in his individual capacity; KIM HALVERSON, in her individual capacity; DR. AARON HAYNES, in his official and individual capacities; KRIS VENOSDEL, in his individual capacity; TIFFANY VOIGT, in her individual capacity; GTL TECHNOLOGY, aka ViaPath Technology, in its individual capacity; JENNIFER WILSON, in her individual capacity; STEPHANIE HAMILTON, in her individual capacity; KARRISA ZIMMER, in her individual capacity; BRENDA MUDDER, in her individual capacity; TRACY FISHER, in her individual capacity; CANDICE FEJFAR, in her individual capacity; BRITTNEY MCGRATH, in her individual capacity; DAYNA KLAWITTER, in her individual capacity; JANELLE BASTEMEYER, in | |

her individual capacity; AMANDA
DEJONG, in her individual capacity;
ELIZABETH PAUL, in her individual
capacity; RACHEL TYCZ, in her
individual capacity; STEPHEN BAKER,
in his individual capacity; CASSIE
DEFENBAUGH, in her individual and
official capacities; MARRY [sic]
CARPENTER, in her individual
capacity; BRITTNEY LENGKEEK, in her
individual and official capacities; DR.
MELVIN WALLINGA, in his official and
individual capacities; ARAMARK FOOD
SERVICES, in its official capacity;
UNKNOWN DOC EMPLOYEES, in their
individual and official capacities;
UNKNOWN DEPARTMENT OF HEALTH
EMPLOYEES, in their individual and
official capacities; UNKNOWN DOC
CONTRACTORS, in their individual and
official capacities; AUDRA STROM, in
her individual capacity; ROBYN STOLZ,
in her individual capacity; VANESSA
GEBES, in her individual capacity; DEB
EILERS, in her individual capacity;
ADDYSON AGUIRRE, in her individual
and official capacities; CARISSA
WAREMBOURG, in her individual
capacity; KIM LIPPINCOTT, in her
individual capacity; JOSEPHINE
PECHOUS, in her individual and official
capacities; TABITHA LARSEN, in her
individual and official capacities;
SUMMIT FOOD SERVICE; and KELLY
TJEERDSMA, in her individual and
official capacities,

                    Defendants

        Plaintiff, David L. Counts, filed a pro se civil rights lawsuit under 42

U.S.C. § 1983 and 42 U.S.C. § 1985. Docket 1. When this action was

commenced, Counts was an inmate at Mike Durfee State Prison (Docket 1 at

1), but he has been transferred to the South Dakota State Penitentiary (Docket 19). This court granted Counts leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Docket 9. After Counts paid his initial partial filing fee, the court screened Counts's complaint and supplements, dismissing it in part and directing service on the remaining defendants. Docket 20.

Counts has been diagnosed with reactive airway dysfunction syndrome (RADS). Docket 17 at 20–24. In his third amended complaint, Counts requests that the court "order an evidentiary hearing in this matter to find placement for [him] that is safe and meets both of the department of corrections specialist recommendations[]" related to his RADS. Docket 41 at 4. The court construed this request as a request for a preliminary injunction and a request for an evidentiary hearing on his request for a preliminary injunction. Docket 55 at 5–6. Counts also filed a separate motion for an evidentiary hearing and a temporary restraining order. Docket 47 at 1–3. The court ordered the defendants employed by the South Dakota Department of Corrections who had been served (DOC defendants) to reply to Counts's motion for an evidentiary hearing. Docket 55 at 6–7. The DOC defendants oppose Counts's motion for an evidentiary hearing. Dockets 83–85. After reviewing the DOC defendants' response, Counts's reply brief in support of his motion for evidentiary hearing

(Docket 99),[1] and Counts's other related filings,[2] the court grants Counts's motion for an evidentiary hearing. As discussed below, there are factual disputes that must be resolved before the court can rule on Counts's motion for preliminary injunction.

## FACTUAL BACKGROUND[3]

On July 17, 2023, while he was incarcerated at MDSP, Counts was scheduled for an appointment with an outside medical consultant, Dr. Micheal Pietila, a pulmonary medicine specialist, for evaluation of his RADS. Docket 47-1 at 1. Counts reported that his symptoms were "severe" and included cough and shortness of breath. *Id.* Dr. Pietila was able to rule out chronic obstructive pulmonary disease on the basis of pulmonary function testing. *Id.* According to Dr. Pietila, Counts's "condition is most consistent with reactive airway disease dysfunction syndrome and asthma-like airway disease." *Id.* at 4. Although the condition "mimics asthma[,]" it is a "consequence of exposure." *Id.* at 1. Dr. Pietila recommended that Counts continue on his current medications and

---

[1] Counts filed a "Motion to Dispute Defenadts [sic] Claim to Deny Evdentury [sic] Hearing." Docket 99. The court construes this pleading to be Counts's reply brief in support of his motion for evidentiary hearing. Leave of court is not required to file a reply brief, *see* D.S.D. Civ. LR 7.1.B, but the court grants Counts's motion, Docket 99, to the extent that he is requesting that his pleading be part of the record.

[2] Counts filed a pleading seeking "Leave to File Motion to Add New Facts and Immediate Danger for Plaintiff for Docket (47)." Docket 177. The court construes this pleading as a motion seeking leave to submit additional evidence in support of his motion for evidentiary hearing. Counts's motion, Docket 177, is granted. If the DOC defendants choose to do so, they may refute this additional evidence during the evidentiary hearing.

[3] As noted above, there are factual disputes based on the record before the court. The court will cite the facts as alleged by each of the parties.

ordered a new medication to be administered via a nebulizer. *Id.* at 4.

According to the assessment/plan portion of Dr. Pietila's July 17, 2023, medical record:

> Most importantly needs to avoid potential triggers. He should be placed in an environment where he does not get exposed to smoke or particulate matter, noxious inhaled substances. He should be in an air conditioned unit. He should avoid being outdoors on days that it [is] greater than 75% humidity or temperatures greater than 90 degrees. He should similarly avoid cold temperatures that is less than 20 degrees outside[;] he should minimize his time exposed to cold air. . . . I would certainly support him moving to a facility where he is not exposed to smoke, heat, cold air or humidity.

*Id.* Counts contends that MDSP medical and administrative officials asked Dr. Pietila to change his evaluation, but Dr. Pietila declined. Docket 124 at 1. Dr. Pietila offered to provide information to the MDSP Warden and requested that the providers at MDSP facilitate a discussion with the Warden if they are in agreement. Docket 47-1 at 5.

Counts alleges that defendants Brent Fluke, Warden at MDSP; Associate Warden Alejandro Reyes; Stephanie Hamilton, lead nursing supervisor; Rachel Tycz, head nurse; and Vanessa Gebes, HAS administrator, told him "they would not follow any of Dr. Pietila[']s orders[]" and that they could not understand Dr. Pietila's orders. Docket 69 at 1. Counts states that Fluke, Reyes, Hamilton, Tycz, Gebes, and officials from the DOC in Pierre told Counts that they needed to send him to Sioux Falls to see another DOC pulmonary specialist, Dr. Taylor, "so they could get a second opinion on [his] disease and how to keep [him] safe, so they could understand just what Dr. Pietila was saying." *Id.*

On October 26, 2023, Counts was transferred to the SDSP. *Id.*; Docket 85 ¶ 5. After his transfer, he was taken to Avera McKennan hospital and examined by Dr. Taylor. Docket 69 at 1. According to Counts's affidavit, Dr. Taylor "agreed with everything that Dr[.] Pietila has advised the department of corrections to do[.] Dr[.] Taylor also added [he] need[s] to stay 40 [f]eet away from all smoke, . . . cannot be around bug killer, weed killer, paint, paint thinner . . . excessive dust, and any noxious chemicals[.]" *Id.*[4] After receiving Dr. Taylor's report, Counts contends that the "Department of Corrections secretary of corrections, director of prisons, the ADA, Addyson Aguirre DOC attorney, SDSP medical, and the wardens, had an emergency meeting" on November 14, 2023. Docket 124 at 2. During this meeting, according to Counts, it was determined "that MDSP would not be appropriate to house [Counts] . . . due to continued lung damage. It was determined that [Counts] would remain at SDSP, until appropriate housing could be arranged due to some less contaminants at SDSP, and slightly better control." *Id.*; *see also* Docket 41-1 at 5.

Counts alleges that Fluke informed him in response to one of his grievances that "the DOC was sending [him] to Sioux [F]alls to get another DOC special recommendation's [sic] and that those recommendation's [sic] would be adopted." Docket 41 ¶ 3. Despite this assurance, Counts alleges that the DOC

---

[4] Dr. Taylor's report is not part of the record. It appears that Counts intended to include Dr. Taylor's report as an exhibit to his motion for evidentiary hearing, *see* Docket 47 at 1, but Dr. Taylor's report is not among the exhibits Counts submitted along with his motion. *See* Docket 47-1.

did not comply with Dr. Taylor's recommendations. *Id.* Counts sent a kite to health services reporting that he was having continued problems because he was exposed to smoke and certain chemicals causing "permanent irreparable damage to [his] lungs[.]" *Id.* Counts received correspondence from Cassidy Segich,[5] dated December 14, 2023, responding to his kite. Docket 41-1 at 6. Segich's response states:

> I received your request about the recommendations provided by the pulmonologist. As mentioned, those are only recommendations and it is up to the provider in the facility to accept or deny this. From my understanding, you have discussed these concerns in person with our provider in house. Please keep in mind that this environment is difficult to accommodate those requests. Please be cognizant of your environment and take caution as needed.

*Id.* According to Counts, he was "told that health services are not allowed to list these things at the request of DOC administration, because this would make it too difficult to house [him]." Docket 41 ¶ 3. Counts alleges that Dr. Pietila called Fluke and informed him of the danger of having Counts exposed to irritants and how continued exposure to irritants would damage Counts's lungs, but Counts does not indicate when this telephone call occurred. Docket 99 ¶ 3.

In correspondence dated December 20, 2023, one of the providers at SDSP, Ally Oplinger, informed Counts that she had added the pulmonologist's recommendations as medical restrictions in Counts's DOC medical records.

---

[5] Cassidy Segich is the Health Services Administrator for the SDSP. Docket 85 ¶ 2. The DOC defendants submitted an affidavit from Segich in opposition to Counts's motion for evidentiary hearing. *See* Docket 85.

Docket 47 ¶ 4; Docket 47-1 at 6. A comment in Counts's SDDOC patient overview, dated January 2, 2024, states "[s]moke 40 feet away, cannot be in contact with bleach, paint, paint thinner, excessive dust, bug killer, weed killer, cold below 20 degrees, humidity over 75%[.]" *Id.* at 7–8. Oplinger's December 20, 2023, correspondence states that "there is always a possibility that you may be exposed to these irritants due to the close living quarters. The infirmary would be the only guaranteed place that would completely limit the irritant exposure, however, the infirmary is typically reserved for patients in very critical medical care/needs." *Id.* at 6. Counts has not been placed in the infirmary, and he alleges that he has been told by DOC officials that if he were placed in the infirmary at Jameson Annex, the medical department would change his record to get him moved. Docket 68 at 2. Counts has provided to the ADA director at the SDSP a list of the irritants the pulmonary specialists have recommended he avoid. Docket 69 at 1.

Despite the restrictions noted in Counts's medical records, he contends that none of the restrictions are being followed. *Id.* Counts has provided evidence, in the form of his declaration under penalty of perjury, 28 U.S.C. § 1746, and an affidavit, that he is being exposed to triggers that put him at risk of further lung damage.[6] Docket 68 at 2; Docket 69 at 2. Counts states

---

[6] In their opposition to Counts's motion for evidentiary hearing, the DOC defendants argue that Counts "offers no evidence to establish the existence or extent of these alleged airborne pollutants [smoke, paint, and bug spray] at SDSP." Docket 83 at 4. The court disagrees. Counts's affidavit, Docket 69, is evidence, as are his motion for evidentiary hearing, Docket 47, motion for order to show cause, Docket 68, and his motion to dispute defendants' claim to deny evidentiary hearing, Docket 99. Counts's motions are unsworn declarations he

that bug spraying occurs weekly at the SDSP. Docket 68 at 2; Docket 69 at 1. Bleach is used in the kitchen where he eats. Docket 68 at 2; Docket 69 at 1. There is a fire pit that is used daily for Native American ceremonies causing smoke to blow through the dining hall windows and to cover all living facilities at SDSP. Docket 68 at 2; Docket 69 at 1. To access legal typing, Counts must go within ten feet of the Native American sweat lodge. Docket 124 ¶ 30. Painting with industrial latex paint and polyurethane occurs daily. Docket 68 at 2; Docket 69 at 1.

According to the DOC defendants, Counts is a former cigarette smoker and smoked a pack a day for approximately twenty-two years. Docket 85 ¶ 7. Counts counters that his DOC medical records indicate that he smoked a pack a day for only one year. Docket 99 ¶ 4; Docket 99-1 at 4. *But see* Docket 2 at 22 (history of smoking indicates 2 packs per day for 20 to 25 years). In addition to RADS, the DOC defendants contend that Counts suffers from COPD. Docket 85 ¶ 8. Counts disputes that he suffers from COPD, Docket 99 ¶ 6; Docket 99-1 at 5, and states that he has been issued a CPAP machine for sleep apnea, Docket 99 ¶ 6; Docket 99-1 at 12. The DOC defendants do not dispute that Counts has reported that environmental triggers such as dust, smoke, and extreme temperatures, exacerbate his pulmonary condition, Docket 85 ¶ 9, but Segich, the health services administrator for SDSP, is "unaware of any airborne pollutants present at SDSP that would cause imminent health risks for

---

has declared as true and correct under the penalty of perjury pursuant to 28 U.S.C. § 1746.

someone with Counts'[s] condition." *Id.* ¶ 13. Segich does not "believe the air at SDSP currently puts Counts at an unreasonably high risk of physical danger." *Id.* ¶ 14. Counts has been provided a face mask, which he is encouraged to wear as necessary to avoid irritants he believes may cause respiratory distress. *Id.* ¶ 11. Counts does not dispute that he has a mask, but he contends that he has trouble wearing a mask for extended periods of time because of the extensive lung damage "caused by all departments of the doc [sic] at MDSP[.]" Docket 99 ¶ 7. According to Counts, his oxygen saturation level drops to 82% when he wears a mask. *Id.*; *see also* Docket 99-1 at 10. Counts is currently housed in West Hall, which is air-conditioned. Docket 85 ¶ 15.

As of December 18, 2023, Counts contends that he was spending approximately three hours each day taking nebulizer treatments to keep his lungs open enough to breathe. Docket 41 ¶ 6. Recently, Counts inhaled OC spray directed at another prisoner. Docket 177 ¶ 4. Because of this, he had to use his nebulizers for three hours and was coughing up blood. *Id.* Counts submitted a kite to medical following this incident. *Id.* One of the SDSP providers responded that correctional officers have been directed not to spray Counts, but the medical staff cannot restrict security staff from deploying OC spray on other offenders. Docket 177-1 at 2. As a result, "there may be rare circumstances in which [Counts] [is] exposed if deployed nearby." *Id.*

## DISCUSSION

### I.     Motion for Evidentiary Hearing

A temporary restraining order is issued only in the extremely rare instance in which court action must be taken without notice to the nonmoving party. Fed. R. Civ. P. 65(b). Because the DOC defendants have been provided notice and filed a response to Counts's motion for evidentiary hearing, the court will construe Counts's motions as requests for a preliminary injunction. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). Further, "[c]ourts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order." *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)).

A preliminary injunction is an "extraordinary and drastic remedy[.]" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). Counts, the party seeking preliminary relief, bears the burden of establishing the elements necessary for relief. *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Whether a preliminary injunction should issue is decided by weighing the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). In a prison setting, a request for a

preliminary injunction "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.' " *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). When there is a material factual controversy, it is appropriate for a district court to hold a hearing when considering a motion for preliminary injunction. *See United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 744 (8th Cir. 2002) ("An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists.").

In their opposition to Counts's motion for evidentiary hearing, the DOC defendants argue that the motion should be denied for two reasons. *See* Docket 83. First, the DOC defendants contend that Counts cannot succeed on the merits of his motion because he has not exhausted his administrative remedies. *Id.* at 5–7. Second, the DOC defendants contend that Counts has not submitted any evidence that continued exposure to potential triggers identified by Dr. Pietila and Dr. Taylor poses a threat of imminent harm or an unusually high risk for physical danger. *Id.* at 7–9.

### A.    Failure to Exhaust

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Smith v. Brown*, 4:16-CV-04014-LLP, 2018 WL

4658223, at *21 (D.S.D. Sept. 27, 2018) (citing *Jones v. Bock*, 459 U.S. 199, 211 (2007)). On claims covered by the PLRA, a plaintiff is required to exhaust administrative remedies before seeking a preliminary injunction. *Swiftbird v. Yantis*, 5:19-CV-05008-JLV, 2020 WL 264656, at *4 (D.S.D. Jan. 16, 2020) (holding that that PLRA precludes inmates from bringing claims for injunctive relief unless all available administrative remedies are exhausted). The PLRA's exhaustion requirement is an affirmative defense that a defendant has the burden of pleading and proving. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). Although failure to exhaust is an affirmative defense, at the preliminary injunction stage, the court must consider whether the DOC defendants are likely to succeed in establishing this defense. *Gonzales v. O Centro Espirita Benificente Uniao do Vegetal*, 546 U.S. 418, 428–29 (2006).

The DOC defendants do not dispute that Counts, while incarcerated at MDSP, filed grievances or Informal Resolution Requests reporting that he was experiencing respiratory "attacks" because he was exposed to irritants the DOC pulmonary specialists had ordered him to avoid. Docket 83 at 6. In fact, the DOC defendants submitted two of these IRRs, along with the DOC's response, in support of their opposition to Counts's motion for evidentiary hearing. *See* Docket 84-2 at 10–13. But the DOC defendants contend that "[g]iven the nature of [Counts's] allegations (i.e., that the atmosphere around him is causing damage to his lungs) the IRRs filed at MDSP . . . are no longer relevant—they address different issues at a different prison." Docket 83 at 6. Based on the DOC defendants' response to Counts's motion for evidentiary

hearing, whether the grievances and IRRs submitted while at MDSP are "relevant" is a question of fact.

While incarcerated at MDSP, Counts submitted an IRR (#47507) reporting that he was being exposed to heavy dust and/or noxious substances in the air that "goes against the Department of Corrections specialist orders to have [him] avoid heavy dust." Docket 84-2 at 13. DOC staff responded that "[n]o inmate has an implied right or expectation to be housed in any particular facility . . . [and] [i]inmates are subject to transfer . . . at the discretion of the Warden or Secretary of Corrections." *Id.* at 12. Counts submitted another IRR (#47506) reporting that the Native American sweat lodge was burning treated pallets and putting off chemical smoke that he is forced to breath despite Dr. Pietila's orders that he avoid smoke. *Id.* at 11. DOC staff rejected IRR #47506 because "[t]his issue has already been addressed." *Id.* at 10.

While incarcerated at MDSP, Counts submitted an IRR (#42677) requesting that an updated attorney list be added to the inmate tablets. *Id.* at 6. After Counts was transferred to the SDSP, he submitted another IRR (#48302) again requesting that an updated attorney list be added to the inmate tablets. *Id.* at 6, 8–9. DOC staff responded that Counts had already submitted a grievance (IRR # 42677) on the issue and cited the policy provision providing that if an inmate has received a response to a grievance and submits another grievance involving the same issue, the subsequent grievance will be rejected. *Id.* at 8.

Counts contends that the issues with smoke and chemicals are the same at the SDSP as they were at MDSP. Docket 47 ¶ 9. He also notes that once an issue has been addressed, further grievances will be dismissed. Docket 99 ¶ 13. According to Counts, the DOC defendants have rejected multiple grievances he has submitted reporting continued exposure to irritants and triggers. *Id.* On the basis of the record before the court, there are fact questions that exist regarding whether there were administrative remedies available to Counts after his transfer to the SDSP. It appears that the DOC considered Counts's initial grievance reporting exposure to one irritant, heavy dust, to preclude further grievances regarding exposure to another irritant, smoke. It also appears that when considering whether Counts has previously grieved an issue, the DOC considers all the grievances he has submitted, regardless of the housing location.

Counts also contends that he submitted a grievance on January 2, 2024, due to "smoke and chemicals that he is being forced to inhale at SDSP . . . is against the advice of two of the DOC pulmonary specialist[s.]" Docket 124 ¶ 35. Jason Mills, the unit coordinator to whom Counts submitted the grievance, claims he lost it. *Id.*; *see also* Docket 99 ¶ 12. When Counts completed and submitted a new grievance to Mills, Counts contends that Mills told Counts that if he is "experiencing problems th[e]n he needs to have the ADA move him to another facility." Docket 124 ¶ 35. Prisoners are excused from exhausting remedies when prison officials prevent inmates from utilizing grievance procedures. *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (citing *Gibson v.*

*Weber*, 431 F.3d 339, 341 (8th Cir. 2005)). The evidence before the court presents a fact question whether prison officials at the SDSP have prevented Counts from utilizing the grievance procedure.

There is also a question of fact whether fear of retaliation excuses Counts from exhaustion. "Administrative remedies are not available if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *East v. Minnehaha Cnty.*, 986 F.3d 816, 821 (8th Cir. 2021) (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). In such a case, the inmate is not required to exhaust his claims before suing in federal court. *Id.* (citing *Ross*, 578 U.S. at 644). According to the Eighth Circuit, to demonstrate that fear of retaliation excuses an inmate from exhaustion, "there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's action to threaten retaliation if the prisoner chose to utilize the prison grievance system." *Id.* (quoting *McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015)).

Counts alleges that he "slowed down" filing grievances after he was transferred to the SDSP because a DOC official told Counts that "if he filled [sic] lots of grievances then he might end up somewhere that he does not like[.]" Docket 99 ¶ 15. Because of this statement, Counts is worried for his safety if he files grievances. *Id.* When Counts was at MDSP, Counts contends that he was moved to barracks in a former Morten building that had been transformed into living quarters. *Id.* This housing placement was contrary to

the DOC specialists' orders and made Counts's pulmonary condition worse. *Id.* Counts asserts that he was moved to the former Morten building in retaliation for filing grievances and this lawsuit. *Id.* If, as Counts alleges, a DOC official told him he might end up somewhere he does not like if he filed grievances, a reasonable prisoner of ordinary firmness could have understood this statement to threaten retaliation.

For these reasons, there are fact questions that exist about whether administrative remedies were available to Counts and, therefore, also fact questions whether Counts is likely to succeed on the merits of his claim that the DOC defendants are liable for deliberate indifference to his serious medical needs.

In the DOC defendants' response to Counts's motion for evidentiary hearing, they note that the SDSP medical staff is treating Counts's RADS and that he is scheduled for multiple specialty appointments related to his breathing conditions. Docket 85 ¶¶ 10, 12, 15. But Counts's motion for preliminary injunction does not seek additional medical treatment for his RADS. As Counts stated in his reply pleading, he is "not claiming deliberate indifference on the part of SDSP medical staff[.]" Docket 99 ¶ 2. Rather, he alleges that DOC officials who are aware of, but choose to ignore, the recommendations of two pulmonary specialists regarding exposure to irritants are deliberately indifferent to his serious medical need. *Id.* ¶¶ 2, 3, 21; *see Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[d]eliberate

indifference may be demonstrated by prison guards who . . . intentionally interfere with prescribed treatment").

### B.   Irreparable Harm

The DOC defendants assert that "[o]ther than the unsubstantiated allegation that his respiratory condition has 'gotten worse' . . . Counts does not otherwise support his assertion of irreparable harm." Docket 83 at 4. Contrary to the DOC defendants' assertion, Counts has submitted evidence to support his assertion of irreparable harm. Counts contends that Dr. Taylor ordered a new medication for his lungs because his condition was worsening. Docket 99 ¶ 5. Specifically, Dr. Taylor ordered injections of Dupexant 300 mg every two weeks for life. *Id.*; *see also* Docket 99-1 at 3. As of December 18, 2023, Counts contends that he was spending approximately three hours each day taking nebulizer treatments to keep his lungs open enough to breathe. Docket 41 ¶ 6. On April 15, 2024, Counts had an x-ray performed at the SDSP. Docket 177 ¶ 2. According to Counts, the x-ray showed new infiltrations in his lungs, further restricting his air way. *Id.* Counts contends the new infiltrations are the result of continued exposure to irritants the pulmonary specialists have ordered him to avoid. *Id.* Counts has also submitted evidence that his RADS was caused by exposure to irritants and that two pulmonary specialists have ordered that he avoid certain irritants. Docket 47-1 at 1, 4; Docket 69 at 1.

According to Counts, after reviewing Dr. Taylor's report, the DOC determined that Counts should not return to MDSP because he his exposure to irritants at MDSP would be greater than his exposure at the SDSP. Docket 124

at 2. The DOC defendants do not dispute that Counts's RADS is "a consequence of exposure." Docket 47-1 at 1. If further exposure to irritants were not potentially harmful to Counts, there would be no reason for the pulmonary specialists to recommend that he avoid irritants or for the DOC to determine that Counts should not return to MDSP. Finally, Counts contends that Dr. Pietila called Fluke and informed him of the danger of having Counts exposed to irritants and how continued exposure to irritants will damage Counts's lungs. Docket 99 ¶ 3.

What harm continued exposure to irritants is reasonably certain to cause is a medical opinion, but neither of the parties have submitted any competent medical evidence on this issue. The court recognizes that Counts is incarcerated, has been granted leave to file in forma pauperis, and to date, the court has denied his motions for appointment of counsel. Docket 10; Docket 20 at 81; Docket 41; Docket 55 at 7–8. Thus, Counts's ability to present competent medical evidence in support of his motion for preliminary injunction has necessarily been limited.

In opposition to Counts's motion for evidentiary hearing, the DOC defendants submitted an affidavit from Cassidy Segich, the health services administrator at the SDSP. *See* Docket 85. Segich opines that (1) Counts is not exposed to any airborne pollutants at SDSP that would cause an imminent risk and (2) that Counts is not at an unreasonably high risk of physical danger because of the air at the SDSP. Docket 85. But Segich's affidavit does not outline what education, training, and experience she has to offer these

opinions. *See generally id.* Because she has not examined Counts, Counts argues that Segich is not familiar with his condition. Docket 99 ¶ 10. Counts also states that Segich is a nurse, not a doctor. *Id.* If Counts is correct, then Segich does not have sufficient medical expertise to offer medical causation opinions. *See, e.g.*, *Peppers v. Washington Cnty.*, 2015 WL 13404333, at *2 (E.D. Tenn. Oct. 8, 2015) (holding that a nurse is not competent to opine that asphyxiation was the cause of death in a § 1983 action); *Strickholm v. Evangelical Lutheran Good Samaritan Soc.*, 2013 WL 788096, at * 5–6 (D. Idaho Mar. 1, 2013) (granting motion in limine to preclude a registered nurse from testifying about the cause of a resident's pressure ulcer and death); *Coonce v. Simons*, 520 S.W.3d 821, 825 (Mo. Ct. App. 2017) (stating that a nurse is not competent to offer testimony regarding the cause of death in a wrongful death action); *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) (precluding a nurse from testifying as to the cause of a staph infection is "keeping with the majority rule that nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause"). Finally, it is not clear why the DOC defendants did not request that one of the DOC medical providers who has examined Counts and is familiar with his condition address whether Counts is being exposed to irritants or other conditions that may have a detrimental impact on his health.

Based on the evidence Counts has submitted, the court finds that an evidentiary hearing is warranted. Counts's motion for evidentiary hearing,

Docket 47, is granted. The court will hold an evidentiary hearing to consider

these issues:

- After Counts was transferred to the SDSP, were there available administrative remedies regarding exposure to irritants and other conditions the pulmonary specialists directed Counts to avoid?

- Have prison officials at the SDSP prevented Counts from utilizing the grievance process?

- Does fear of retaliation excuse Counts from exhausting available administrative remedies?

- At the SDSP, is Counts exposed to irritants or other conditions that the pulmonary specialists consulted by DOC have recommended Counts avoid?

- If Counts is exposed to irritants or other conditions he has been directed to avoid, how often, for what duration, and under what circumstances does this occur?

- Has Counts's lung condition worsened or progressed because of exposure to irritants and other conditions he has been instructed to avoid?

- If Counts is exposed to irritants or other conditions in the future that he has been directed to avoid, what impact is such exposure likely to have on Counts's condition and overall health? Would the impact be transitory and reversible or would the impact be long-term and permanent?

- Does the extent, frequency, or duration of exposure affect the impact on Counts's condition and overall health?  If so, how?

## II.    Counts's Motion for Counsel

In his motion for an evidentiary hearing, Counts requested that counsel

be appointed for the evidentiary hearing. Docket 47 at 2. *See also* Docket 68 at

2. The court indicated that it would rule on this request for counsel when it

determined whether an evidentiary hearing is necessary. Docket 55 at 7 n.3.

Because an evidentiary hearing is necessary, the court will appoint counsel to represent Counts during the evidentiary hearing and issue a further order after this appointment has been made.

## III.   Counts's Motion to Compel

Counts has not provided a copy of the April 15, 2024, x-ray report he contends demonstrates that his lung condition has worsened. Counts requested a copy of the x-ray report, but the medical records department at the SDSP advised Counts that he would be responsible for paying for medical records he is requesting. Docket 179 ¶ 3. Counts has filed a motion to compel medical records and medical policies he has requested. *See* Docket 179. The DOC defendants have filed a motion to dismiss. *See* Docket 73.[7] While this motion to dismiss is pending, the parties may not conduct discovery. *See* Fed. R. Civ. P. 26(d)(1). Accordingly, at this stage of the proceedings, Counts's motion to compel (Docket 179) is denied in part without prejudice. But the court recognizes that at least some of Counts's DOC medical records are relevant to the issues the court plans to consider during the evidentiary hearing. Thus, Counts's motion to compel (Docket 179) is granted in part, and the court directs the DOC to cooperate with Counts's counsel, after counsel is appointed, to make available to Counts's counsel, at no cost to Counts or his counsel, the relevant medical records that Counts's counsel requests in

---

[7] It should be noted that the DOC defendants moved to dismiss some, but not all, of the claims against them that survived screening. *Compare* Docket 20 at 75–81 *with* Docket 74. The DOC defendants did not move to dismiss Counts's Eighth Amendment claim for deliberate indifference to his serious medical needs. *See* Docket 74.

preparation for the evidentiary hearing.[8] If the DOC refuses to do so, Counts's counsel may file a renewed motion to compel, including a request for attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(5).

## IV. Counts's Motion for Summary Judgment Based on Cassidy Segich's Affidavit

Counts moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(g) [sic: 56(h)] on the grounds that Cassidy Segich submitted an affidavit in bad faith in response to Counts's motion for evidentiary hearing. Docket 137. Federal Rule of Civil Procedure 56(h) provides that "[i]f satisfied that an affidavit . . . is submitted in bad faith . . . , the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Although portions of Segich's affidavit, *see* Docket 85 ¶¶ 7, 8, appear to conflict with the portions of Counts's medical records that are before the court, standing alone, this is not sufficient to satisfy the court that the affidavit was submitted in bad faith. As Counts points out in his reply pleading, Segich's statements that she is unaware of any airborne pollutants present at SDSP that would cause imminent health risks for Counts and that she does not believe the air at SDSP currently puts Counts at an unreasonably high risk of

---

[8] The court notes that the DOC defendants, in response to Counts's motion for evidentiary hearing, submitted documents establishing that after Counts was transferred from MDSP to the SDSP, a box containing copies of his medical records, which he had paid for, and medical correspondence was missing. Docket 84-2 at 20. In response to a grievance about the missing medical records, Counts was informed that the DOC is not responsible for lost or stolen property. *Id.* at 21.

physical danger lack foundation. *See id.* ¶¶ 13, 14. The court agrees, and absent further foundation, the court will not consider this evidence when ruling on Counts's motion for preliminary injunction. But an affidavit is not necessarily submitted in bad faith simply because the affidavit does not establish that there is sufficient foundation for all the affiant's opinions. Counts's motion for summary judgment pursuant to Rule 56(g), Docket 137, is denied.

Thus, IT IS ORDERED:

1. That Counts's motion for evidentiary hearing (Docket 47) and motion for appointment of counsel for only the evidentiary hearing (Docket 47) are granted. After the appointment is made, the court will issue a further order and schedule the evidentiary hearing.

2. That Counts's motion to dispute defendants' claim to deny evidentiary hearing (Docket 99) is granted to the extent that Counts is requesting that his pleading be part of the record.

3. That Counts's motion to add new facts and immediate danger for plaintiff (Docket 177) is granted.

4. That Counts's motion to compel (Docket 179) is denied without prejudice in part and granted to the extent the DOC is directed to cooperate with the counsel the court appoints to represent Counts during the evidentiary hearing to make available to Counts's counsel, at no cost to Counts or his counsel, the relevant medical

records that Counts's counsel requests in preparation for the evidentiary hearing.

5.     That Counts's motion for summary judgment for submitting an affidavit in bad faith (Docket 137) is denied.

Dated May 2, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE